UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ERIC BLACKWELL | CIVIL ACTION |
| VERSUS | NUMBER 04-1686<br>(REF: 04-1930) |
| MID-STREAM FUEL SVC, ET AL. | SECTION "L" (5) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. PROCEDURAL HISTORY

This case arose out of injuries allegedly sustained by Plaintiff Carl Binder on December 2, 2003, when he served as a captain aboard the vessel M/V JEANIE G. Plaintiff was employed by the operator of the vessel, Mid-Stream Fuel Service, LLC ("Mid-Stream"). The vessel was owned by Martin Operating Partnership, LP ("Martin").

Plaintiff alleges that his injuries arose during a collision of the M/V JEANIE G and M/V OCEAN PRIDE on December 2, 2003. At the time of the collision, Plaintiff was a captain in command of the JEANIE G.[1] The JEANIE G attempted to "meet" the OCEAN PRIDE at the intersection of the Mobile Ship Channel and the Intercoastal Waterway. Although the OCEAN PRIDE agreed to allow the JEANIE G to cross in front, Plaintiff determined during the approach that the maneuver could not be made safely. When Plaintiff attempted to abort the crossing, the JEANIE G's starboard engine failed. While the Plaintiff and another crewman attempted to restart the engine, the OCEAN PRIDE collided with the JEANIE G. Plaintiff claims that during the collision he was tossed about the wheelhouse.

Plaintiff alleges that he suffers from debilitating injuries to his neck and back arising from

---

[1] The parties agree that the M/V JEANIE G is a "vessel" under the jurisprudence of the Fifth Circuit, and that the Plaintiff is a seaman under the Jones Act, 46 U.S.C. § 688.



the accident. Mr. Binder stopped work at Mid-Stream in early July 2004. Mid-Stream contends that it fired Plaintiff because he failed to show up for work on July 6. Plaintiff alleges that he informed Mid-Stream in June 2004 and again on July 9 that he would be unable to return to work because of his injuries. In any event, Plaintiff continued to work for Mid-Stream after the accident from December 2003 to June 2004. In October 2004, Plaintiff obtained a position with Colonial Trailways as a mechanic's helper. Plaintiff alleges that he sought this job because of his financial obligations, and alleges he was forced to quit in January 2005 because of continuing back and neck pain. Plaintiff alleges that he did not work from January to August 2005. In August 2005, Plaintiff obtained full-time employment in the maritime industry.

Defendants challenge Plaintiff's allegations regarding the causation, nature and severity of his injuries. Defendants argue that Plaintiff continued to work for six months after the accident, and never connected the neck and back pain that he reported to his doctors to the accident. In addition, Defendants allege that they never received proper demand from Plaintiff for maintenance and cure, and they argue that this lack of demand relieves them of their obligation to pay maintenance and cure. Moreover, Defendants argue that all of the treatment that Plaintiff has received for his pain has been palliative; thus, they argue that no maintenance and cure is owed because maximum medical cure was reached quickly after the accident.

Plaintiff filed the present suit on July 7, 2004, and alleged claims under the Jones Act for unseaworthiness, negligence, and past and future maintenance and cure of $37 per day. This suit was consolidated with a related case, and both cases were set for jury trial on July 25, 2005. The parties agreed that the unseaworthiness and negligence claims would be heard in a jury trial, with the maintenance and cure claim to be heard in a bench trial. In July 2005, the jury returned a verdict partially in the Plaintiff's favor on his negligence claim. The jury found no

unseaworthiness, and found Mid-Stream 20% negligent in the accident. They awarded $100,000 pain and suffering, $5,000 for future impairment, and $5,000 loss of past wages (with 20% of these amounts awarded to Plaintiff, for a total to Plaintiff of $22,000).

The Court heard the Plaintiff's maintenance and cure claim at a one-day bench trial on December 22, 2005. After hearing the witnesses and considering all the evidence, the Court issues the following findings of fact and conclusions of law. To the extent that a finding of fact constitutes a conclusion of law, the Court adopts it as such. To the extent that a conclusion of law constitutes a finding of fact, the Court adopts it as such.

## II. FINDINGS OF FACT

1. At all times pertinent hereto, Defendant Mid-Stream Fuel Service, LLC ("Mid-Stream") was the operator of the M/V JEANIE G, and Defendant Martin Operating Partnership, LP ("Martin") was the owner of the same vessel.

2. On December 2, 2003, Plaintiff Carl Binder was employed by Mid-Stream and was assigned to work as a captain aboard the M/V JEANIE G. At that time, the M/V JEANIE G was a tug/push boat operating in the navigable waters of the United States.

3. On December 2, 2003, the JEANIE G collided with the M/V OCEAN PRIDE at the intersection of the Mobile Ship Channel and the Intercoastal Waterway. As a result of the collision, Carl Binder was thrown about the wheelhouse of the JEANIE G. A jury in this case found that Mid-Stream, Plaintiff's employer, was a proximate cause of Plaintiff's injuries.

4. Plaintiff visited his primary care physician, Dr. William Hicks, on December 4, 2003. Dr. Hicks noted that Plaintiff was "in boating accident 12/01/03" and complained of "pain neck/back, low right[.]" Dr. Hicks ordered an X-ray of Plaintiff's cervical spine and prescribed Flexeril (a muscle relaxant), Bextra (an anti-inflammatory) and Darvocet (a pain medication).

Dr. Hicks further noted that Plaintiff could return to work on December 9, 2003 with the condition that Plaintiff take Bextra while working.

5. Following the accident of December 2, 2003, Plaintiff continued to work for Mid-Stream until July 2004. Although Plaintiff states that he notified Mid-Stream of his need for medical treatment in June 2004, Plaintiff's personnel records do not reflect any written or oral notice during that time. On July 5, 2004, Plaintiff called Mid-Stream and asked at what time he needed to report to work on the following day. On July 6, 2004, Plaintiff failed to report to work. On July 9, 2004, Plaintiff informed Mid-Stream that he was injured and could not return to work. When Plaintiff filed for Alabama state unemployment benefits, Mid-Stream reported that it had terminated Plaintiff effective July 6, 2004 for job abandonment.

6. On June 20, 2004, Plaintiff visited the emergency room at South Baldwin Medical Center in Foley, Alabama and complained of severe pain in his right flank. Doctors at South Baldwin diagnosed Plaintiff as having kidney stones, and prescribed Lortab, a narcotic pain medication.

7. Although Plaintiff alleges that he informed Mid-Stream of his visit to the emergency room and need for further treatment, Mid-Stream has no documentation of Plaintiff's notice.

8. On June 28, 2004, Plaintiff visited Dr. Hicks and complained of back pain. Plaintiff informed Dr. Hicks that he had a boating accident earlier in the year. Dr. Hicks prescribed Flexeril and Bextra and referred Plaintiff to Dr. Andre Fontana, an orthopedist.

9. On June 30, 2004, Plaintiff visited Dr. Andre Fontana. Plaintiff stated that he had pain in his lower back and legs that had gotten progressively worse since an accident on December 2, 2003. Dr. Fontana ordered an MRI for Plaintiff's back and a cortisone injection, and prescribed Celebrex, an anti-inflammatory. Dr. Fontana noted that X-rays indicated "some

mild degenerative changes" to Plaintiff's lumbar spine, and found that Plaintiff was suffering from lumbar strain for which conservative treatment had failed. Dr. Ashe, the physician who performed Plaintiff's MRI, noted that the MRI showed narrowing of the lumbar spine, possible mild bulging of one disc, possible mild protrusion of another disc, and severe spinal stenosis.

10. Dr. Fontana initially prescribed a regimen of physical therapy, which included heat and ultrasound therapy as well as exercise. Plaintiff reported that with physical therapy the pain improved on some days, but that the relief was transient.

11. On July 21, 2004, Plaintiff visited Dr. S. Daniel Seltzer in New Orleans, Louisiana, and complained of pain the back, hips and knees due to a boating accident. Dr. Seltzer found that the Plaintiff suffered from mild to moderate decreased range of motion in his lumbar spine, but his neck and hips were within normal limits. Dr. Seltzer advised that Plaintiff should not return to work until Dr. Seltzer could review the X-rays and MRI previously conducted upon the Plaintiff. Plaintiff did not return to Dr. Seltzer for treatment.

12. On September 7, 2004, upon the recommendation of Dr. Fontana, Plaintiff underwent a Epidural Steroid Injection in his spine to combat the pain he was experiencing. After the injection, Plaintiff did not return to Dr. Fontana until May 2005.

13. Plaintiff was employed by Colonial Trailways from October 2004 to January 2005 as a mechanic's helper. On August 28, 2005, Plaintiff returned to full-time employment in the maritime industry.

14. Plaintiff has incurred the following medical expenses since the December 2, 2003 accident:

| | |
|---|---|
| South Baldwin Regional Medical Center (June 20, 2004) | $ 319.85 |
| McGregor Medical, P.A. (Dr. Hicks) (Dec. 4, 2003 to Jun. 2004) | $ 489.00 |

| | |
|---|---|
| Alabama Orthopedic Center (Jun. 2004 to May 2005) | $5,511.40 |
| Dr. S. Daniel Seltzer (July 2004) | $ 357.00 |

15. Plaintiff testified that his monthly rent during the period from July 2004 to August 2005 was $695 per month. He lived in a home with his girlfriend and his two children. For utilities, Plaintiff paid $80 to $100 per month for electricity, $50 to $65 for water, and $75 for telephone service. Plaintiff testified that his monthly food expenses for himself alone were $150 to $200, and the same rate applied to his two children.

### III. CONCLUSIONS OF LAW

1. The Court has jurisdiction over this matter pursuant to its admiralty jurisdiction under 20 U.S.C. § 1333. Plaintiff was at all relevant times a seaman within the meaning of the Jones Act, 46 U.S.C. § 688, giving the Court original jurisdiction over this matter. Accordingly, the Jones Act and the General Maritime Law of the United States are the substantive laws applicable to this case.

2. Maintenance and cure is an obligation imposed upon a shipowner to provide for a seaman who becomes ill or injured during his service to the ship. *Boudreaux v. U.S.*, 280 F.3d 461, 468 (5th Cir. 2002). The duty to provide cure encompasses the obligation to reimburse medical expenses and to ensure proper treatment and care. *Id.* The duty to provide maintenance involves reimbursement for the reasonable costs of subsistence the seaman has incurred while recuperating. *Hall v. Noble Drilling (U.S.) Inc.*, 242 F.3d 582, 587 (5th Cir. 2001). Regarding maintenance, the seaman is limited to actual expenses paid for food and lodging, if those expenses are deemed reasonable by community standards. *Id.* at 589. The seaman's burden of proof regarding maintenance expenses is very light, and the district court may take judicial notice

of the prevailing rate in the district. *Id.* at 590.

    3.    The shipowner's duty to provide maintenance and cure is not waived by the seaman's negligence. *Boudreaux v. U.S.*, 280 F.3d 461, 468 (5th Cir. 2002). The shipowner's obligation for maintenance and cure terminates when the seaman reaches maximum cure. *Breese v. AWI, Inc.*, 823 F.2d 100, 104 (5th Cir. 1987). Maximum cure is the point at which it is probable that further treatment will not result in betterment of the seaman's condition. *Vella v. Ford Motor Co.*, 421 U.S. 1, 5-6 (1975); *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1970). If future treatment is merely palliative, that is, treating only pain and suffering but not otherwise improving the seaman's condition, then maximum cure has been reached. *Pelotto*, 604 F.2d at 400.

    4.    The weight of credible testimony and documentary evidence demonstrates that Plaintiff became unable to work on July 6, 2004, the first date he failed to show up for work at Mid-Stream. Mid-Stream became obligated to provide maintenance and cure on that date.

    5.    On September 7, 2004, Plaintiff received an epidural spinal injection. Given that Plaintiff sought no further medical treatment until May 2005, and that he began employment doing physical labor in October 2004, the Court finds that Plaintiff achieved maximum medical cure on September 7, 2004. Consequently, Mid-Stream was obligated to provide maintenance and cure from July 6 to September 7, 2004, a period of 64 days.

    6.    Plaintiff has requested $37 per day in maintenance. The Court finds that amount to be reasonable by community standards and supported by Plaintiff's testimony regarding his living expenses. Accordingly, the total maintenance payment for the period of July 6 to September 7 is $2,368.00.

7.   Plaintiff alleges that he has incurred $6,677.25 in medical expenses arising from the December 2, 2003 accident. Of this amount, $175.00 to Alabama Orthopedic Center was incurred after September 7, 2004, the date of maximum cure. In addition, there are no medical bills or invoices in the record to support the expenses claimed from South Baldwin Medical Center ($319.85) and McGregor Medical, P.A. ($489.00). Consequently, the total cure payment due for the relevant period is $5,693.40.

8.   Upon receiving a demand for maintenance and cure, a shipowner is not required to begin payments immediately, but may undertake a reasonable investigation of the seaman's claim. *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987). If after an investigation the shipowner unreasonably rejects the demand for maintenance and cure, the shipowner is liable for both maintenance and cure and for compensatory damages, including damages for aggravation of the seaman's injuries. *Id.* If the failure to pay maintenance and cure is found to be willful, attorney's fees and punitive damages are appropriate. *Id.* For punitive damages and attorneys' fees to be awarded, the shipowner's failure to pay must be "callous and recalcitrant, arbitrary and capricious, or willful, callous, and persistent." *Id. See also Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 177 (5th Cir. 2005) (citing the *Morales* standard with approval).

9.   Given the nature of the Plaintiff's injuries and the type of notice given to the Defendants, the Court finds no evidence that the Defendants' failure to pay maintenance and cure was unreasonable, callous, arbitrary, or capricious. Therefore, the Court declines to award Plaintiff compensatory damages, punitive damages and attorneys' fees.

10.   Pursuant to 28 U.S.C. § 1961, a district court is authorized to award pre-judgment

interest upon any recovery of monetary damages. In this Circuit, there is a strong presumption in favor of awarding pre-judgment interest in admiralty cases, and interest generally should only be denied when the plaintiff delays unreasonably in bringing suit. *U.S. v. Ocean Bulk Ships, Inc.*, 248 F.3d 331, 344 (5th Cir. 2001). This rate is generally a fixed rate within the discretion of the Court, running from the date of the loss. *Reeled Tubing, Inc. v. M/V Chad G*, 794 F.2d 1026, 1028 (5th Cir. 1986). Because the Court finds no inequity that would mandate a denial of pre-judgment interest, pre-judgment interest shall be awarded in this matter.

## IV. CONCLUSION

On the basis of the foregoing findings of fact and conclusions of law, the Court concludes the following:

(1) Defendant Mid-Stream Fuel Service, LLC is liable for maintenance and cure payments to Plaintiff Carl Binder for the period from July 6, 2004 to September 7, 2004.

(2) Plaintiff is entitled to recover $2,368.00 in maintenance.

(3) Plaintiff is entitled to recover $5,693.40 in cure.

(4) Pre-judgment interest at the rate of 3.00% from December 2, 2003 to the date of judgment.

IT IS SO ORDERED.

New Orleans, Louisiana, this 30th day of January, 2006.

UNITED STATES DISTRICT JUDGE